[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above two captioned actions, both of which seek a prejudgment remedy, as authorized by General Statutes §52-278a et seq., to attach real estate and/or other assets belonging to the defendant in each action, were consolidated for trial as they involve the same parties and the same issues. In the first action, RXR Group, Inc. and several related corporations (hereinafter collectively referred to as RXR) is the plaintiff, and the defendant is James R. McConnon. In the second action, McConnon is the plaintiff and RXR is the defendant.
The complaint by RXR in the first action contains four counts. In the first count, the plaintiff alleges that it entered into an agreement dated September 15, 1994, with the defendant, McConnon, to pay him certain sums of money in exchange for McConnon's resignation from RXR. The plaintiff claims that it signed the agreement due to fraudulent inducement by the defendant. The second, third and fourth counts allege that such conduct on the part of the defendant constituted a breach of contract, the defendant had been unjustly enriched by payments CT Page 849 received by virtue of the agreement, and the plaintiff was entitled to have the contract rescinded.
In the second action, in which McConnon is the plaintiff, he alleges in the first of two counts that the defendant, RXR, signed a promissory note dated September 15, 1994, for $100,000, payable in semi-monthly installments, and that the defendant ceased to pay as of February, 1997. In the second count of his complaint, McConnon alleges that RXR signed another note, also on September 15, 1994, for $208,278 and that RXR similarly failed to pay the installments due on that note on and after February 1, 1997. McConnon seeks an attachment in the approximate amount of $81,000.
On October 6, 1997, the parties to these two cases entered into a "Stipulation" of facts for purposes of the prejudgment remedy hearing. The facts as stipulated and as found at the hearing may be summarized as follows.
McConnon was a stockholder, a director, and the chief investment officer of RXR, as well as one of its founders. The evidence also disclosed that, pursuant to a Shareholders Agreement dated December 19, 1986, McConnon had a life-time employment guarantee which could be terminated only for "cause," including the "conviction of a felonious crime." On June 8, 1994, McConnon was arrested by the Ridgefield Police and charged with sexual assault and two counts of risk of injury to a minor, to which he pleaded not guilty and protested his innocence to RXR.
RXR at this time was involved in a transaction with First Boston and feared that disclosure of McConnon's arrest would be detrimental to its interests. It therefore began negotiations with McConnon aimed at getting him out of the plaintiff corporation, including turning over his stock and resigning his directorship and employment. The relationship between the plaintiff and the defendant soured considerably during the negotiations including when the defendant's attorney wrote to RXR accusing it of, among other things, "defamation," "slander," "tortious breach of the implied covenant of good faith and fair dealing;" a conspiracy to "defease Mr. McConnon of his rightful entitlement, status and stature;" and treating the defendant as a "dish towel to be discarded [and] a pariah to be expurgated."
The plaintiff and the defendant, however, did enter into two agreements dated as of September 15, 1994, one entitled CT Page 850 "Agreement for the Termination of Certain Relationships" and the other a "Stock Purchase Agreement." By virtue of these agreements, McConnon terminated his directorship and employment with the plaintiff, turned over all his stock, and released RXR from all claims and liabilities, including defamation and slander.
RXR executed two promissory notes in return. The first is the "tort note," which has two distinct provisions. The note provided for a fixed payment of $100,000 payable over four years in 96 semi-monthly installments of $1,041.67, without interest. The second element of this note provided for a contingent payment of a maximum of $380,000 based on a percentage of the average yearly compensation paid the three remaining principals directors. This note also provided that if the company failed to make timely installment payments, the entire principal would become due with interest at the greater of 10% or three percentage points over the prime rate announced by Citicorp, and the reasonable costs of collection.
The "stock note" is in the principal amount of $208,278, with interest of eight percent per annum, also payable in 96 semi-monthly installments of $2,538.76. This note recited that it was executed by the plaintiff corporation in consideration of "certain agreements" entered into by McConnon, who had turned over his stock to the company. This note contained provisions upon default similar to the tort note.
RXR began making payments of the installments due to the defendant on these two notes beginning in October, 1994. In January, 1995, McConnon assigned 55% of the two notes to his former wife, Julia H. McConnon, from whom he was in the process of being divorced. Thus, RXR divided each payment into 55% for Mrs. McConnon as assignee and 45% for the defendant by way of separate checks.
On January 18, 1995, McConnon withdrew his not guilty pleas and pleaded guilty to one count of risk of injury to a minor and to one count of sexual assault in the second degree. The case was continued for about seven weeks to obtain a presentence investigation report prior to sentencing.
On or about February 22, 1995, the parties signed an amendment to the Agreement for the Termination of Certain Relationships. This amendment concerned a certain portion of the CT Page 851 so-called contingent tort note. The amendment tied in the payments due under such note to RXR's net income, defined as gross revenues less expenses of conducting business, and such payments were "contingent" upon the corporation achieving a specified amount of net income before any payments were due the defendant for the tort note.
On March 14, 1995, in the Superior Court in Danbury, McConnon was sentenced to three years in prison. After serving about 18 months, he was released on parole in September, 1996.
After having paid all of the installments due on both notes, including installments due during the time the defendant was incarcerated, RXR ceased making payments to either McConnon or to his former wife as of February 1, 1997. RXR claimed that it had been fraudulently induced into signing the tort note and accompanying agreement by reason of the defendant's claim that he was innocent of the criminal charges lodged against him. RXR resolved its controversy with the former Mrs. McConnon and she is not involved in these two present actions.
With regard to the cross-applications for prejudgment remedies, "[I]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court." General Statutes § 52-278d(a)(4).
It is well recognized that "[p]rejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities. . . . Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." (Citations omitted; internal quotation marks omitted.) Tyler v. Schnabel, 34 Conn. App. 216, 219-20, CT Page 852641 A.2d 388 (1994).
The court agrees with RXR that it entered into the agreements based on the fraudulent representations of McConnon that he was innocent of the pending criminal charges. The Shareholders Agreement dated December 19, 1986 provided that a principal of the corporation such as the defendant could be removed for "cause," including the "conviction of a felonious crime," without RXR being obliged to make any payments to such a person. Thus, if the defendant had told RXR the true facts, RXR would have had no reason to execute the two notes. However, the court agrees with McConnon that even after RXR knew that he pleaded guilty to the criminal charges lodged against him, RXR continued to pay the two notes for two years. In addition, as mentioned previously, in February, 1995, even after the defendant had pleaded guilty, and was awaiting sentencing, RXR prepared and signed an amendment to the agreement with McConnon regarding the tort note. This amendment provided explicitly that the earlier agreement was ratified, confirmed and approved.
The defendant has cited Young v. Data Switch Corp. ,231 Conn. 95, 102, 646 A.2d 852 (1994), as authority that an intent to ratify a voidable contract "may be inferred from silence." This case, although involving coercion and duress, rather than fraud, is on point. The plaintiff in that case signed an agreement terminating his employment and providing him with severance benefits. After obtaining all of the benefits required under the agreement, the plaintiff, Young, attempted to repudiate the contract with his employer, claiming that he signed it under fear that he might otherwise lose some valuable stock options. The Supreme Court held that Young had ratified the contract by waiting seventeen months after any such threat or duress regarding stock options was over before repudiating the contract. In reaching this decision, the court quoted 3 Restatement (Second), Contracts § 381, wherein ratification of a voidable contract occurs if the repudiating party "does not within a reasonable time manifest to the other party his intention to avoid [the contract]." Id., 101.
Thus, McConnon has shown probable cause that he is entitled to a prejudgment remedy because by January, 1995, RXR knew that he had pleaded guilty to the charges lodged against him. Yet the company continued making payments to McConnon and to his former wife until February, 1997, a period of over two years after RXR knew the true facts of the defendant's involvement in a felony, CT Page 853 which period included the eighteen months that he was actually incarcerated. Moreover, in February, 1995, RXR confirmed and ratified the original "Agreement for the Termination of Certain Relationships," which included the tort note, well after it knew of McConnon's commission of a felony.
As to the amount of the attachment, the defendant claims that he is owed approximately $81,000 and is entitled to an attachment in that amount. Contrary to the assertion by RXR, the amount claimed by McConnon does not include the 55% of the payments previously paid to or due the defendant's former wife as assignee, which payments were credited to RXR as obligor.
RXR also contends that it has made payments to and for the benefit of the defendant and his assignee in the amount of approximately $326,825, which it claims represents an overpayment of about $60,000. This claim is based on the precise that the plaintiff was under no obligation to make any payments based on section 2(a)(ii) of the Agreement because such payments were conditioned upon "net income" as defined. A certified public accountant testified for the plaintiff that the company had sustained a net loss from September, 1994 to September, 1997.
In a trial on the merits, the concept of net book income, the accrual method of accounting versus the cash method, whether unabsorbed debt may be carried forward from prior years to apply against revenue received thereafter, the applicability of a loan by the plaintiff to the defendant in the amount of $100,000, and the relevance, if any, of the plaintiff's income tax returns all have to be more thoroughly analyzed to determine whether the plaintiff is correct that there was no net profit with respect to the contingent portion of the tort note.
At this point, however, it is reasonably clear that the plaintiff received payment on the fixed tort note and the stock note for over two years until RXR ceased making such payments in February, 1997. It is also evident that there is a balance due on these two notes.
From the fact that the plaintiff made such payments, one can infer that the company did have income sufficient to trigger the payments that it actually made to the defendant and his assignee. Discovery and a full trial will afford the opportunity to the plaintiff to further develop the theory that from February 22, 1995, to February, 1997, it had been under no obligation to pay CT Page 854 the contingent tort note, but at this stage of the proceedings, RXR has not shown by the testimony of its accountant that it was not obligated to pay the tort note. Even if the company's accountant is correct, then such payments to McConnon and his assignee were based on the company's own fault or an agreement to pay under the previous formula of September 15, 1994. In either event, a set-off or credit is not due RXR at this time.
RXR also claims that it is entitled to a set-off for a $100,000 note executed in its favor by the defendant, McConnon. This note, however, is not due until September, 1999, and was not alleged in the complaint by RXR as the plaintiff in the first of the above actions. Hence, this note cannot be the basis of a prejudgment remedy or a set-off at this stage of the proceedings.
Thus, discovery and a full trial will provide ample opportunity for RXR to develop its claim that it did not ratify the agreements, and for the defendant to show that he is entitled to a larger amount of damages than those awarded at this time in connection with the prejudgment remedy.
McConnon has demonstrated probable cause that a judgment will be rendered in his favor in the amount of $63,500[1] and an attachment in that amount may issue against the goods and estate of RXR. This amount does not include prejudgment interest as authorized by General Statutes § 37-3a, because the notes themselves provide for the payment of interest upon a default. "The court may . . . modify the prejudgment remedy requested as may be warranted under the circumstances." General Statutes §52-278k.
So Ordered.
Dated at Stamford, Connecticut, this 6th day of January, 1999.
William B. Lewis, Judge.